KEKER, VAN NEST & PETERS LLP
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
NIALL M. FRIZZELL - # 311929
nfrizzell@keker.com
MATTHEW P. GUIANG - # 350298
mguiang@keker.com
633 Battery Street
San Francisco, California 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Plaintiff Terra Enabling Developers, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Terra Enabling Developers, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Garmin International, Inc.,<br><br>Defendant. | Case No. 3:26-cv-14725<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I. STATEMENT OF THE CASE

1. This case arises from the calculated efforts of Defendant Garmin International, Inc. ("Garmin"), one of the world's largest wearable device makers, to sabotage and cannibalize the business of the startup company it relied on, until recently, to provide data-sharing infrastructure connecting Garmin devices to various health and wellness applications.

2. Plaintiff Terra Enabling Developers, Inc. ("Terra") is a San Francisco-based business that helps consumers use the data collected from various health-data sources, including Garmin devices, in third-party health and wellness applications. Many consumers derive significant value from integrating their health data with outside applications. These applications may come in many forms, including health and fitness applications, nutrition applications, medical and clinical applications, sleep and recovery applications, and others. Terra's technical solution — a single, interoperable infrastructure that connects health-data sources, including wearable devices, to a range of health and wellness applications — helps consumers make better use of their own health data, with the help of applications that suit their needs. At the same time, Terra's technology also adds value to wearable devices as tools for gathering health data.

3. Until September 2026, Garmin and Terra contracted for access to the Garmin application programming interface ("API"), which in turn provides access to the health data collected on Garmin devices. Under the terms of this arrangement, Garmin was aware of and even approved Terra's access to the Garmin API on behalf of various Terra customers — the third-party applications making use of consumers' health data.

4. However, on September 1, 2026, Garmin announced an abrupt change of course. With no prior notice, Garmin informed Terra in an ambiguous email that all access to individual health data might be terminated unless Terra provided a plan for making certain technical changes to its customers' data integrations. Garmin had never previously made such an ultimatum. But Terra nonetheless prepared a thorough response and sought a meeting so that Garmin could explain its supposed concerns.

5. It soon became clear that Garmin had no intention of engaging with Terra in good faith. Later on September 1 — with no warning, no explanation, and no response to Terra's

proposal — Garmin suddenly began shutting off access to its API and the health data its users had generated. In so doing, Garmin immediately threw numerous integrations into disarray, preventing hundreds of thousands of users from accessing their own health data on applications they paid for and subscribed to. In effect, Garmin locked its own users out of their own health data and prevented them from using applications they had already paid for.

6. Garmin's actions had exactly the result Garmin intended. Terra was immediately beset by requests for technical assistance, for refunds, and for cancellation. Discussions regarding renewed or expanded services were immediately derailed. And Terra's customers were deluged with similar requests from end users confused about their sudden inability to access their own health data in their chosen applications.

7. At the same time Garmin was sabotaging the ecosystem of applications using Garmin-collected data, Garmin was also taking steps to profit from the chaos it created. Garmin unveiled its own, Garmin-specific infrastructure for integrating data with third-party applications to replace any connections through Terra. This infrastructure requires exorbitant payments to Garmin directly, both upfront and for monthly data access. Unlike Terra's infrastructure, Garmin's infrastructure is also specific to Garmin devices, rather than functional across devices. As a result, third-party applications must now pay additional and higher fees for access to a more technologically limited service.

8. Garmin has not stopped there. To further shut Terra out of the marketplace, Garmin has also added terms and conditions to its agreements with third-party applications that forbid those applications from contracting or subcontracting with Terra — even where the applications wish to continue using Terra, and even where they are not asking Terra to access Garmin's API. Garmin has also enforced these terms, asking numerous Terra customers to demonstrate that they will not be working with Terra, and terminating them where they do.

9. The result, again, is exactly as Garmin intended. Numerous contracts between Terra and customers formerly relying on a Garmin integration are affected by Garmin's sweeping prohibition on doing business with Terra. Terra has lost numerous contracts with existing and prospective customers. Terra has lost revenue on numerous contracts where business has been

significantly reduced. Terra has been forced to issue refunds and divert considerable resources away from business development. And Garmin has profoundly impacted Terra's standing in the marketplace, including by misrepresenting its role and lying to Terra's customers about its misconduct.

10. Garmin's multipronged attack on Terra's business is not just wrong; it is unlawful. Garmin has interfered with Terra's contracts and prospective economic relationships with third-party applications, which in many instances have endured for years. Garmin has imposed unlawful restraints on third-party applications' ability to do business with Terra, and on Terra's business directly. And Garmin has engaged in unlawful and unfair competition that severely harms not only Terra, but also the consumers seeking to make use of their health data and the applications relying on it. Garmin has locked users out of their own health data, and its conduct threatens to reduce competition, reduce service quality, and increase prices. Garmin's misconduct is ongoing, and Garmin continues to inflict considerable monetary and nonmonetary injury on Terra, as well as on consumers and other businesses.

## II. PARTIES

11. Plaintiff Terra Enabling Developers, Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Terra provides technology that helps individuals share data between their wearable devices and various health and wellness applications.

12. Defendant Garmin International, Inc. is a Kansas corporation with its principal place of business at 1200 East 151st Street, Olathe, Kansas 66062. Garmin makes and sells wearable fitness and health devices. It also operates the Garmin Connect Developer Program ("Garmin Connect"), through which it controls access to the health data that its users generate on Garmin devices.

## III. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000,

exclusive of interest and costs. Terra is a citizen of Delaware and California. Garmin is a citizen of Kansas.

14. This Court has specific personal jurisdiction over Garmin. Garmin purposefully directed its alleged conduct to California and to entities and customers in California, including Terra. Garmin interfered with Terra's relationships with numerous customers based in and operating in California, including customers in this District. Garmin engaged in its unlawful conduct knowing Terra is headquartered in California and is largely harmed in California. Terra's claims arise out of and relate to Garmin's California-directed acts.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Terra's claims occurred and are occurring in this District, including Garmin's communications with Terra's customers, Garmin's interference with Terra's contractual and business relationships, and the resulting injury to Terra's business, which is based in San Francisco.

16. Under Civil Local Rule 3-2(c) and (d), assignment to the San Francisco or Oakland Division is proper because a substantial part of the events giving rise to Terra's claims occurred in San Francisco, where Terra is headquartered and where many affected customers are located.

## IV. FACTUAL BACKGROUND

### A. Terra powers health and wellness apps by securely integrating user health data collected from various health-data sources, including wearable devices.

17. Terra provides a unified API that allows individuals to securely share health data from various sources, including wearable devices, with certain health and wellness applications. Terra's API provides a single, standardized interface for accessing health data that originates with different health applications and wearable device companies. This single, standardized interface is a considerably less costly and more convenient data-sharing solution than building and maintaining separate infrastructure for every data connection between a particular wearable device and a particular health and wellness application.

18. Terra's primary customers are the businesses that use its API for their health and wellness applications. Customers may include gyms, medical clinics, trainers or recovery centers, or companies specializing in training and coaching applications, clinical applications, sleep or recovery services, or insurance and benefits platforms. Terra's customers build Terra into their own applications. Incorporating Terra's infrastructure then allows the users of those applications — the "end users" — to share and make better use of the health data they generate on different wearable devices, through applications ranging from fitness trackers to health and wellness tracking applications.

19. Every Terra customer contracts with Terra to gain access to Terra's API. Terra's customer contracts typically take one of two forms. Some customers enter into one- or two-year contracts, referred to as "Services Agreements," under which payments are typically made in monthly installments. Other customers enter into Terra's standard agreement, which runs either month to month or for a longer prepaid term.

20. Under either contractual arrangement, Terra grants the customer a nonexclusive right during the contractual term to use Terra's API package to ensure end-user data can be securely transmitted to the customer's application in usable form. Each Terra contract describes this service in substantially similar terms: the customer "will access Terra's API to capture fitness and wellness data, subject to the wearables' limitations and users' consent to access their data." An end user's data is only accessed and transmitted to an application with the end user's consent, because the end user is seeking to integrate their health data into a health and wellness application of their choosing.

21. Terra's customer agreements are ongoing, recurring-revenue relationships under which customers pay Terra for a fixed-term service. Contracts renew automatically for successive terms unless either party gives advance written notice of non-renewal. Terra's customers therefore reasonably expect, and Terra reasonably expects, that these relationships will typically continue and grow as the number of end users increases and customer needs expand. Many of Terra's customer relationships have been ongoing for many years, with numerous uninterrupted renewals and expansions of service.

### B. Many end users are interested in sharing the data they generate on Garmin wearable devices.

22. Garmin is among the world's largest makers of wearable fitness and health devices. For many of Terra's customers, Garmin devices are among the most important sources of data, as end users rely primarily on Garmin wearable devices to collect their health data.

23. Data collected on Garmin devices, such as activity, sleep, heart rate, training, and other health data, flows to and is stored in each user's Garmin account, called a Garmin Connect account.

24. Garmin exerts control over third-party access to end users' data through Garmin Connect, which offers a set of application programming interfaces, including the Activity, Health, Training, Courses, and Women's Health APIs. A business that wants its application to receive an end user's data from a Garmin device must register an integration (a software application designed to interact with Garmin's software) and obtain credentials from Garmin.

25. For the last six years, Terra has participated in Garmin Connect as a licensee under the Garmin Connect Developer Program Agreement (the "Developer Agreement"). The Developer Agreement licenses Terra to use the Garmin APIs and the data transmitted through them with each end user's consent.

26. Although Garmin devices are responsible for generating data from their end users, all such data belongs to the end user. Terra exists to let users put that data to work in the applications they choose, without each application having to build and maintain separate infrastructure for every wearable device.

### C. Garmin abruptly cut off Terra's access to data, effectively locking out end users, as well as their health and wellness applications, from critical health data.

27. From 2020 until September 2026, Terra and Garmin enjoyed a productive commercial relationship under which Terra enabled numerous businesses to access and use Garmin data through applications registered under Terra's Garmin developer account. Garmin assigned a product owner to manage its relationship with Terra, and Garmin approved each of Terra's applications through its own review process. Garmin knew that Terra served many

downstream businesses, and Garmin benefited from that arrangement because Terra brought Garmin's data and features into hundreds of products used by hundreds of thousands of end users, thereby increasing the utility — and thus the value — of Garmin devices.

28. During this period, Terra allowed its customers to connect to Garmin in one of three ways: (1) through Terra's "shared" Garmin applications, including an application called "Terra-V5," which served multiple customers; (2) through "dedicated" applications that served a specific customer; or (3) through an application under the customer's own Garmin account.

29. In February 2026, Garmin wrote to Terra to ask that it begin "creat[ing] dedicated apps per single customer" rather than integrating new customers into Terra-V5. Garmin explained that it would put "separate agreements in place to allow faster app creation," under which Terra would "be able to create as many [dedicated] apps as [it] like[d]."

30. Terra responded the next day, asking to meet "to align on how we can best support all data attribution guidelines from our side and smooth[] the process for creating new apps." At the parties' subsequent meeting, Garmin confirmed that Terra could create applications as it wished, and Garmin did not suggest that any existing customers using Terra-V5 be migrated to dedicated applications by any particular time. Garmin never asked Terra to remove a single customer from Terra-V5 or any other shared application. Terra thereafter began creating dedicated, customer-specific applications under its Garmin developer account, which Garmin reviewed and approved.

31. At no point did Garmin express dissatisfaction with Terra's applications. To the contrary, in April 2026, Garmin invited Terra to participate in Garmin's annual "Health Awards," which Garmin hosted to "recogniz[e] top innovators driving impact in digital health by using Garmin wearables and Garmin Health API or SDK integration."

32. On September 1, 2026, Garmin abruptly notified Terra that, absent a migration of all customers to dedicated applications, it would "deactivate the apps completely or even your access overall." Garmin demanded a roadmap for completion of this migration.

33. Garmin did not wait for a response from Terra. The same day, Garmin disabled new user authentication across Terra's entire developer account, including for the dedicated

applications Garmin had requested and approved. And Garmin blocked Terra from creating new applications. That action made it impossible for Terra to complete the migration Garmin had just demanded.

34. Terra responded within hours and followed up the next day with a migration roadmap, as Garmin had abruptly requested. Terra also asked Garmin to restore application creation so that it could carry out the migration. On September 4, Terra's Chief Executive Officer followed up, explaining that Garmin's block on new applications prevented Terra from doing what Garmin had asked.

35. Garmin never substantively responded. Instead, on September 21, 2026, with no notice, Garmin terminated Terra's API access in a one-line message. As a result, data immediately stopped flowing to Terra's customers' applications. And hundreds of thousands of end users immediately lost the ability to send their own data to their chosen apps. Fitness apps could no longer record or access exercise data. Clinical apps no longer received patient data. Garmin gave no notice to Terra, the apps, or the end users. Terra's calls and messages to Garmin went unanswered. On information and belief, Terra is the only developer Garmin has singled out by cutting off API access.

36. The reason for Garmin's actions soon became clear. On information and belief, shortly after cutting off Terra, Garmin began demanding that Terra's customers enter direct, paid relationships with Garmin in order to reestablish their access to user data.

37. On information and belief, Garmin quoted Terra's customers non-refundable onboarding fees of $5,000 — in some cases with added monthly fees for each user. Garmin also demanded monthly data fees for access to user data. For example, Garmin quoted one customer $0.20 per user per month — an extortionate amount for an application that cannot survive unless users have consistent and ongoing access to their data.

38. Applications that cannot pay Garmin's new fees lose access to their users' historical data. By making itself the only option, Garmin is now charging a premium for the same service businesses already obtained from Terra. Garmin is also denying end users control over their own health data and how they wish to use it. As to Garmin's European users, seizing control

over private health data in this way is also a violation of Article 20 of the EU General Data Protection Regulation and Article 5 of the EU Data Act.

39. Further, because Garmin's service is specific to Garmin, it is technologically inferior to Terra's service for any application that needs to integrate data from other types of wearable devices. Applications must now use multiple platforms, and pay multiple times, for a service that was previously streamlined.

**D. Garmin has barred Terra's existing and prospective customers from working with Terra.**

40. Garmin has not stopped at preventing Terra from facilitating the sharing of health data. As early as September 2026, Garmin began telling Terra's existing and prospective customers, in writing, that they could not work with Terra. Garmin also added requirements to the Garmin Connect terms to that effect. And Garmin ended or threatened to end its relationships with Terra's customers when it discovered that they were working with Terra.

41. Garmin even bars apps from working with Terra where Terra would not be accessing Garmin's API and would only be engaged as a technical subcontractor. For example, Garmin has told customers that "API data must be sent to servers owned/managed by your organization only," and that credentials "must not be shared with, transferred to, disclosed to, or used by any external third party." Garmin has also told customers that they must state in their public, end-user privacy policies that they do not use Terra in any way, including as a subcontractor, or Garmin will not give them credentials.

42. In at least one known instance, Garmin has also made false statements to Terra's customers about its business dealings with Terra, mischaracterizing Garmin's data disruptions as a choice Garmin spent months negotiating with Terra and attempting to avoid. No such negotiations ever took place. On the contrary, Garmin cut off access to users' health data without notice, throwing numerous integrations into disarray without regard for the customers or end users depending on them, then sought to capitalize on the disruption it had created, redirecting scrambling customers to its own, costlier data-sharing infrastructure.

43. Garmin's conduct has damaged Terra's relationships with dozens of current and prospective customers, including but not limited to the examples described below. Garmin is aware of these customer relationships with Terra because they were disclosed and often specifically approved by Garmin. In many instances, Terra's customers also reached out to Garmin regarding their desire to continue working with Terra. Garmin then told them that working with Terra was forbidden, and that they had to pay new fees to Garmin to maintain access to their existing services.

a. **Customer A**, located in California, has a twelve-month Services Agreement with Terra which it signed in September 2026, replacing an earlier twelve-month contract. Most of Customer A's connections were Garmin connections. After Garmin cut off access to user data, Customer A demanded that its agreement with Terra be terminated. Customer A has since moved its Garmin integration to a direct relationship with Garmin, and its Garmin connections through Terra were removed, jeopardizing months of recurring revenue over the remaining agreement term.

b. **Customer B**, based in California, subscribed to a monthly Terra plan. Almost all of its connections were Garmin users. After Garmin cut off Terra's access, Customer B cancelled its Terra subscription, writing: "After Garmin no longer works, it does not make sense for us."

c. **Customer C**, based in California, subscribed to a monthly Terra plan. After Garmin cut off Terra's access, Customer C requested a refund "since the Garmin functionality we are paying for has been unavailable," noting that "Garmin is the reason we subscribed to Terra."

d. **Customer D**, based in California, has a Services Agreement with Terra dated August 2025 and renewed in August 2026, worth thousands per month. Garmin accounted for over half of Customer D's active end users. After Garmin cut off Terra's access, Customer D wrote to Terra that it had "been down with Garmin for close to a month." To restore service, Customer D had to obtain its own Garmin credentials, and every end user that had connected to Garmin through Terra had to reconnect. Only a small fraction has done so. Terra has expended

support and engineering resources responding to Customer D's lost service and is at risk of losing Customer D's business entirely.

e. **Customer E**, based in California, has a monthly plan with Terra. In October 2026, Garmin told Customer E that Garmin would not approve Customer E's access without further evidence of Customer E's relationship with Terra, and that Customer E "must integrate directly" with Garmin, as Garmin's new services agreement would "not support sending data to any" third party. Now that Garmin has prohibited running data through Terra, Customer E has asked whether it can keep using Terra at all and has requested a refund.

f. **Customer F**, based in California, has a longstanding annual plan that renewed in April 2026. Customer F's many Garmin users have received no data through Terra since late September 2026. Under Garmin's new requirements, Customer F can restore Garmin data only by obtaining its own Garmin application. On information and belief, Customer F's April 2027 renewal is now at risk.

g. **Customers G and H** are California-based Terra customers that intended to set up Garmin credentials on Terra. On information and belief, Garmin prevented them from doing so, requiring each to apply to Garmin for its own Garmin application, add Garmin branding, and complete Garmin compliance forms. If they did not do so, Garmin would not have allowed them to keep Garmin integrations. As a result, Terra lost the revenue associated with these customers' Garmin users.

h. **Customer I**, based in New York, has a Services Agreement with Terra, which was most recently renewed in June 2026. Thousands of Customer I's Garmin connections stopped receiving data in September 2026. Garmin told Customer I that its only option was to connect directly with Garmin. Garmin refused to give a reason for this requirement. Customer I later received an email stating that users' health data may not be routed through or on behalf of another organization. Customer I's Garmin connections have not been restored, and its discussions to expand the relationship with Terra have been put on hold.

i. **Customer J**, a New York and Israeli company, subscribes to a monthly plan with Terra. Customer J's product supports Garmin devices. When Customer J asked if it

could continue connecting through Terra, Garmin refused, asserting that sharing credentials with a third party "is against our license agreement." Garmin revoked Customer J's application and set its account to inactive status in late September 2026. Customer J has told Terra it is deciding whether to stay with Terra or build directly with Garmin.

j. **Customer K**, based in Connecticut, has an annual plan with Terra. Customer K listed Terra as a third-party integrator in Garmin's application questionnaire. Garmin replied that it "will not deliver data directly to any external third-party endpoint," and that Customer K must confirm a direct integration. Customer K's Garmin connections have not been restored, and Terra has had to credit Customer K for its Garmin connections that have not been receiving data.

k. **Customer L,** a Colorado and Canadian business, has a two-year Services Agreement with a remaining value of more than one hundred thousand dollars. After Garmin cut off Terra's access, Customer L wrote that Garmin's actions were "a crisis" affecting over a quarter of end users. With no other option, Customer L has now integrated directly with Garmin, which places significant revenue from Customer L's contract with Terra at risk.

l. **Customer M**, based in Canada, has subscribed to a monthly plan with Terra since June 2024. After Garmin abruptly cut off access to users' health data, Customer M reported that over 100 patients lost access to their data. After Customer M obtained its own Garmin developer account, Garmin requested screenshots of Customer M's technical integration showing how users would connect to Garmin and where the user data would go. One screenshot showed Terra's logo. Garmin informed Customer M that it would not deliver data to a third-party endpoint, and then rejected or revoked both of Customer M's applications.

m. **Customer N**, based in the United Kingdom, subscribes to a monthly plan. Customer N told Garmin its "preference" was to use Terra because Terra provides "a unified shape" for health data across multiple wearable device providers. In response, Garmin told Customer N that it "must connect directly" with Garmin's service. Garmin later repeated that "direct integration is required" as it "do[es] not support API credentials sharing." Customer N has since asked to revisit its contract and pricing with Terra.

n. **Customer O**, based in the United Kingdom, subscribes to a monthly plan with Terra. Customer O told Garmin it was using Terra while pursuing a pending Garmin application. Garmin said that Customer O was not permitted to "deliver API data directly to an external third-party endpoint." Customer O's connection to Garmin through Terra has not been restored, which places future revenue from Customer O's contract with Terra at risk.

o. **Customer P**, based in Switzerland, has a prepaid annual subscription with Terra. Garmin rejected Customer P's application after Customer P disclosed that Terra provided its integration and explicitly instructed Customer P that it could not use Terra to provide its integration. Garmin approved Customer P only after Customer P, at Garmin's direction, added a statement to its privacy policy that its Garmin integration is built and run by Customer P without any third-party integration provider. Terra has thus lost the Garmin portion of Customer P's account, which accounts for nearly one-third of Customer P's active users, and the renewal of its contract with Customer P is at risk. Terra has also spent considerable engineering and support resources on addressing Customer P's concerns.

p. **Customer Q**, based in Sweden, subscribes to a monthly Terra plan and repeatedly informed Garmin of its intention to continue doing so. After Garmin cut off access to user data, Garmin initially told Customer Q that it could continue using Terra, but as a subcontractor. Several days later, Garmin reversed course and stated that Customer Q was "not allowed to use Terra as downstream processor" of user data. Customer Q no longer receives Garmin data through Terra.

q. **Customer R**, based in Austria, subscribes to an annual plan with Terra, with additional usage billed monthly. Garmin users accounted for more than half of its connected users. After Garmin cut off Terra's access, Customer R reported that Garmin's new developer agreement had "strictly forbidden" any use of Terra and that it was "not allowed to do this through Terra API" any longer. Customer R has since asked Terra for a full credit for its Garmin users in the current billing cycle and a significant discount.

**E. Terra has suffered considerable harm as a result of Garmin's unlawful actions.**

44. As a direct and proximate result of Garmin's conduct, Terra suffered losses well in excess of $75,000, including lost customers, revenue, and goodwill. Since September 21, 2026, dozens of Terra customers have cancelled, set their accounts to cancel, or paused for reasons attributable to Garmin. Since September 1, 2026, Terra has been forced to refund considerable sums to customers unable to connect to user data derived from Garmin devices, with additional refund requests pending. Terra has also stopped billing for Garmin connections that no longer receive data. Terra's losses as a result of Garmin's actions are accruing on a monthly basis, in addition to its losses in projected growth and prospective business relationships.

45. Terra has also been forced to divert substantial resources to responding to Garmin's conduct. Rather than developing and growing business relationships and enhancing technical offerings, Terra has been forced to redirect its business to responding, to the extent possible, to Garmin's interference with customer relationships and end-user data. Terra's California customers have been hit as well, with numerous customers cancelling their subscriptions to Terra, seeking refunds, or both.

46. Garmin deliberately targeted Terra's customer relationships and sought to destroy them, knowing that its conduct would cause Terra severe harm. Garmin did so purely to redirect those customers to its own higher-cost, lower-value service.

**FIRST CLAIM FOR RELIEF**

**Tortious Interference with Contract**

47. Terra incorporates the preceding paragraphs by reference as though fully set forth herein.

48. Terra has valid contracts with its customers. These include Services Agreements typically of one or two years, as well as standard agreements that may recur monthly or be prepaid for a longer term. Garmin knew of these contracts. Terra informed Garmin of its relationships with customers using health data from Garmin wearable devices. And in many

instances, Terra's customers also told Garmin that they were working with Terra or wished to work with Terra.

49. Garmin intentionally engaged in acts designed to disrupt these contracts. Garmin told Terra's customers they could not use Terra, revoked customers' approved credentials upon discovering that they worked with Terra, and conditioned access on customers ending their relationship with Terra. Garmin's actions were also independently wrongful because they violated the law, including California Business and Professions Code sections 16600 and 17200. Garmin has also made misrepresentations to Terra's customers and has effectively barred individuals from freely accessing and controlling their own health data from Garmin devices.

50. Garmin's conduct caused actual disruption of Terra's contracts. Customers have cancelled, demanded refunds and early termination, reduced their use of Terra's services, and moved their Garmin integrations away from Terra, even after contracting to use Terra.

51. As a direct and proximate result of Garmin's conduct, Terra has suffered damages in an amount to be proven at trial.

52. Further, Garmin's conduct was malicious, oppressive, and fraudulent, warranting punitive damages under California Civil Code section 3294. Garmin's conduct was designed specifically to cause harm to Terra. Garmin sought to destroy Terra's relationships with Terra's customers in order to take Terra's business and charge Terra's customers a premium for a technologically inferior service they had no choice but to accept.

53. Accordingly, Terra requests the relief specified below.

**SECOND CLAIM FOR RELIEF**

**Tortious Interference with Prospective Economic Advantage**

54. Terra incorporates the preceding paragraphs by reference as though fully set forth herein.

55. Terra had existing and prospective economic relationships with its customers and prospective customers, including those described above, that carried the probability of future economic benefit to Terra. This future benefit includes renewals, expansions, and continued

usage-based revenue. Many of the Terra customers identified herein had repeatedly renewed their contracts with Terra over multiple years and/or showed a desire to continue working with Terra.

56. Garmin knew of those relationships.

57. Garmin engaged in intentional and independently wrongful acts designed to disrupt those relationships, as alleged above. These actions are unlawful restraints on trade in violation of California Business and Professions Code section 16600 and unlawful and unfair business practices in violation of California Business and Professions Code section 17200. Garmin has also made misrepresentations to Terra's customers and has effectively barred individuals from freely accessing and controlling their own health data from Garmin devices.

58. Garmin's conduct actually disrupted Terra's prospective economic relationships, including by causing numerous customers to end their relationships with Terra.

59. As a direct and proximate result of Garmin's conduct, Terra has suffered, and continues to suffer, significant economic harm.

60. Garmin's conduct warrants punitive damages under California Civil Code section 3294. Garmin's conduct was designed specifically to cause harm to Terra. Garmin sought to destroy Terra's relationships with its customers in order to take Terra's business and charge its customers a premium for a technologically inferior service they had no choice but to accept.

61. Accordingly, Terra requests the relief specified below.

**THIRD CLAIM FOR RELIEF**

**Unlawful Restraint of Trade, Cal. Bus. & Prof. Code §§ 16600-16608**

62. Terra incorporates the preceding paragraphs by reference as though fully set forth herein.

63. Section 16600(a) of the California Business and Professions Code provides that "[e]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

64. Through its Developer Agreement, its application requirements, and its communications with Terra's customers, Garmin has imposed terms that restrain those customers from engaging Terra as a service provider or subcontractor, even when the customers hold their

own Garmin credentials and Terra needs no access to Garmin's API. Garmin's terms restrain Terra from engaging in its lawful business and restrain businesses from contracting with Terra for its services. The terms are void under section 16600 as an unlawful restraint on trade.

65. Garmin's attempts to enforce those void restraints have injured Terra, which is entitled to injunctive and declaratory relief barring their enforcement.

66. Accordingly, Terra requests the relief specified below.

**FOURTH CLAIM FOR RELIEF**

**Unfair and Unlawful Competition, Cal. Bus. & Prof. Code §§ 17200-17210**

67. Terra incorporates the preceding paragraphs by reference as though fully set forth herein.

68. The Unfair Competition Law prohibits any unlawful, unfair, or fraudulent business act or practice. *See* Cal. Bus. & Prof. Code § 17200.

69. Garmin's acts and practices as alleged herein are unlawful because they constitute, both individually and collectively, tortious interference with contract.

70. Garmin's acts and practices as alleged herein are unlawful because they constitute, both individually and collectively, tortious interference with prospective economic advantage.

71. Garmin's acts and practices as alleged herein are unlawful because they constitute, both individually and collectively, unlawful restraint of trade in violation of California Business and Professions Code sections 16600-16608.

72. The effect of Garmin's conduct is to restrict individuals' access to their own health data; to reduce individuals' ability to use that data on health and wellness apps they have chosen and paid for; to disrupt access to often critical health information consumers rely upon; and to limit competition for data-sharing technology critical to many businesses' operations, resulting in higher prices for a technologically degraded service.

73. Accordingly, Garmin's acts and practices as alleged herein are unfair because:

a. They are immoral, unethical, oppressive, unscrupulous, and substantially injurious to California consumers and businesses, and they offend public policy; and

b. Garmin's acts and practices impose grave harm on California consumers and businesses and have no countervailing public or private utility.

74. Garmin's acts and practices as alleged herein are also unfair because:

a. They impose substantial injury on consumers and businesses;

b. They have no countervailing benefits to consumers and businesses, but simply enable Garmin to reduce lawful competition and innovation, exercise control over users' private health data, and extract higher prices from consumers for existing or degraded services;

c. They have no countervailing benefits to competition, but actively harm competition by shutting out lawful competition and innovation and reducing consumer choice; and

d. The injury Garmin inflicts on consumers and businesses is not one the consumers and businesses could reasonably have avoided in light of Garmin's position in the market and its concerted, ongoing violations of the law.

75. Garmin's acts and practices as alleged herein are also unfair because they significantly threaten and harm competition as described above.

76. As a result of Garmin's acts and practices, Terra has suffered injury in fact and has lost money or property, including lost customer revenue, refunds, and the costs of responding to Garmin's conduct. Garmin's conduct is ongoing, and Terra has no adequate remedy at law for its continuing harm. Terra is entitled to injunctive relief prohibiting Garmin from continuing these practices and to restitution as permitted by law.

77. Accordingly, Terra requests the relief specified below.

**FIFTH CLAIM FOR RELIEF**

**Declaratory Relief**

78. Terra incorporates the preceding paragraphs by reference as though fully set forth herein.

79. An actual, present, and justiciable controversy exists between Terra and Garmin concerning the validity and enforceability of Garmin's contract terms, as well as any related policies or practices, that purport to prohibit Terra's customers from using Terra as a service

provider or subcontractor. Terra seeks a declaration that those terms, policies, and practices are void and unenforceable under California Business and Professions Code section 16600 to the extent they restrain Terra's customers from working with Terra.

80. An actual, present, and justiciable controversy likewise exists between Terra and Garmin as to the lawfulness of Garmin's conduct. Terra seeks a declaration that Garmin has engaged in the unlawful and unfair conduct alleged herein.

81. Accordingly, Terra requests the relief specified below.

## JURY TRIAL DEMAND

Terra demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Terra prays for relief as follows:

1. Actual damages according to proof.

2. Punitive and exemplary damages as may be provided by law.

3. Injunctive relief barring Garmin, and all persons acting in concert with it, from (a) interfering with Terra's current or prospective contractual relationships, including by preventing third parties from using Terra's services to process user data; (b) engaging in unlawful and unfair business practices, including conditioning customers' access to data on their ceasing to use Terra and making false statements to Terra's customers regarding Terra; and (c) incorporating in Terra's customers' contracts any unlawful restraints on trade affecting Terra's ability to do business.

4. Restitution in the amount of any harm to Terra as a result of Garmin's unlawful and unfair conduct and any sums unlawfully acquired or diverted to Garmin.

5. Declaratory relief as set forth above.

6. Reasonable attorneys' fees and costs as permitted by law.

7. Prejudgment and postjudgment interest as provided by law.

8. Such other and further relief as the Court deems just and proper.

Dated: November 24, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ R. Adam Lauridsen*

R. ADAM LAURIDSEN
NIALL M. FRIZZELL
MATTHEW P. GUIANG

Attorneys for Plaintiff Terra Enabling Developers, Inc.